# DAMAGES

## Generally

The fundamental and cardinal principal in the rule of damages is that whatever is awarded must be fair, just and reasonable compensation, no more, no less. These damages are to be awarded for the pain, physical and mental suffering, the disability, the permanency to whatever degree you find exists from the evidence before you, the physical scarring, medical bills, lost wages and lost future earning capacity, and other losses suffered as a direct and proximate result and consequence of the Defendant's negligence.

Broadly stated, the rule of damage is that insofar as money can do it, the Plaintiff is entitled to fair and just compensation, commensurate with Plaintiff's injuries and money losses suffered in the future. You should include the reasonable value, not exceeding actual cost, of all medical care and attention including the medical care by physicians and surgeons, reasonably required and actually rendered to the Plaintiff. The damages you award should include a sum that will reasonably compensate the Plaintiff for any pain, suffering and mental anguish already suffered by the Plaintiff, and proximately resulting from the accident; and also from any pain, suffering and mental anguish which you find from the evidence Plaintiff is reasonably certain to suffer in the future, because of this accident, for such a period of time as you may determine Plaintiff will in reasonable probability live hereafter. You must, therefore, determine in the exercise of your best judgment, what will constitute fair and just compensation to the Plaintiff.

Newtown v. Barnett, 146 Conn., 344 (1959).

In a personal injury action damages are assessed up to the date of trial, and include all future as well as past suffering and disabilities. Damages in tort actions are generally classified into the general categories of economic and non-economic damages. Economic

41

damages include past and future medical bills and past and future lost earnings and earning capacity.

Non-economic damages include the past and future pain and suffering associated with the injuries and the permanent nature of those injuries. Past non-economic damages applies to what the Plaintiff has already suffered up to now. Further non-economic damages pertain to the pain, suffering and mental anguish which you find from the evidence the Plaintiff will reasonably suffer in the future because of this accident, for such a period of time as you may determine that the Plaintiff will in reasonable probability live hereinafter.

Lopez v. Price, 145 Conn., 560 (1958);

See, generally, Wright, Connecticut Jury Instructions, Section 226.

A Plaintiff may recover damages in a personal injury action for pain and suffering even when such pain and suffering is evidenced exclusively by the Plaintiff's subjective complaints. Although in this case there has also been presented objective diagnostic evidence as well.

Delott v. Rorerbach, 170 Conn. 406, 409 (1980).

**Cost of Medical Care**

The Plaintiff is entitled to fair and just compensation for and commensurate with the injuries and money losses suffered up to the present time, plus those Plaintiff is likely with reasonable probability to suffer in the future. You should include the reasonable value, not exceeding actual cost, of all medical care and attention including medical care by physicians and surgeons, reasonably required and actually rendered to the Plaintiff. This would also include medications, x-rays, medical supplies, as shown by the evidence and reasonably required and used for the Plaintiff's treatment. These damages are called medical special

damages because they depend upon the special circumstances and expenditures incurred. If you find that the bills for these services rendered are reasonable, then they should be included in the damages to be awarded to the Plaintiff.

Newton v. Barnett, 146 Conn. 344 (1959);

See, generally, Wright, Connecticut Jury Instructions, Section 226.

**Future Economic (Medical)**

Damages for the future consequences of an injury can never be forecast with certainty. Regarding permanent injuries, actual tables of average life expectancy are commonly used to assist the trier in measuring the loss a Plaintiff is likely to sustain from the future effects of an injury. In addition, the cost and frequency of past medical treatment may be used as a yard stick for future expenses if it can be inferred that the Plaintiff will continue to seek the same form of treatment in the future. It is not speculation or conjecture to calculate future medical expenses based upon the history of medical expenses that have accrued as of the trial date particularly when there is also a degree of medical certainty that future medical expenses will be necessary.

Future medical expenses do not require the same degree of certainty as past medical expenses.

Where the doctor testifies that the injured party might need future treatment and the injured party testifies she still suffers pain, that testimony is sufficient for consideration of the element of future medical expenses.

Seymour v. Carcia, 221 Conn. 473, 479-480 (1992).

**Mental Suffering**

Mental suffering and anguish arising out of physical injury are compensable. All of the mental suffering and anguish which the Plaintiff has suffered and will suffer the future as a result of the injuries Plaintiff sustained are proper elements of damages which must be compensated for.

Thompson v. LuDone, 135 Conn. 236 (1948).

**Loss of Enjoyment of Life's Activities** ·

In addition, those amounts of damages which I have already mentioned, a Plaintiff is entitled to fair, just and reasonable compensation for losses which Plaintiff has suffered that may affect the enjoyment of Plaintiff's life, hobbies or avocations, or Plaintiff's ability to merely sit and remain free of pain, discomfort, fear and anguish. If the Plaintiff has proved to your satisfaction that as a result of Plaintiff's injuries, Plaintiff has difficulty in doing activities, continues to do activities with pain and discomfort and is prevented from doing certain activities, then these are elements of damage which you should award.

Newton v. Barnett, 146 Conn. 344.

**Permanent Medical Disability**

There has been medical evidence from Plaintiff's doctors that the Plaintiff has sustained injuries that caused a permanent disability. Plaintiff is entitled to an award compensating for this disability from the time of the accident to the time of this trial, and, in addition, an award to compensate Plaintiff for this condition for the rest of Plaintiff's natural life.

If an injured party has symptoms that continue to exist for a substantial period of time after the accident, and continue to exist, you may conclude that the injuries or effects are

likely to continue into the future and are likely to continue on a permanent basis. A trier of fact can conclude by inference that an injury is likely to be permanent even though there is no medical testimony expressly substantiating permanency.

The element of permanent disability can be considered as to the existence and the extent of permanent disability. If you accept the medical evidence that the Plaintiff does suffer from permanent disability, and I believe in this case that there was medical evidence from Dr. Hermele that provided some guidance, or may have provided some guidance for you as far as permanent disability is concerned, so that if you accept the medical evidence that the Plaintiff does suffer disabilities, and that the negligence of the Defendant was a proximate cause in causing the Plaintiff's disability, then you should give compensation for that.

Thus, if you find that it is reasonably probable that the Plaintiff has suffered a permanent physical impairment, and that is claimed by the Plaintiff in this case, you will endeavor to compensate Plaintiff for such permanent injury or physical impairment as you find that Plaintiff sustained and will suffer from in the future. It is not a matter of guesswork or speculation. You must be satisfied fairly, with the usual degree of proof which I have defined to you, that the results you are attempting to compensate Plaintiff for are reasonably probable. A Plaintiff is entitled to be compensated for what Plaintiff would fairly be expected to suffer from a permanent condition over the period of Plaintiff's life expectancy.

> Mourison v. Hansen, 128 Conn. 62, 66 (1941);
>
> Golnick v. Sinclair, 124 Conn. 36, 38, 39 (1938);
>
> DeFallo v. Macure, No. 93628, Superior Court, Fairfield County (1958);
>
> Wright, Connecticut Jury Instructions, Section 233.

### Damages – Personal Injury- Permanence Life Expectancy Tables

With respect to any of the plaintiff's injuries or disabilities that you find to be permanent, the plaintiff is entitled to recover for future pain, suffering and disability and the loss of her ability to enjoy life. In this regard you take into consideration the period of time that the plaintiff can be expected to live. In accordance with statistical life expectancy tables, Rose Russo has a life expectancy of 84.2 years. Such a table however, provides nothing more that a statistical average. It neither guarantees that Rose Russo will live an additional 19.2 years or means that she will not live for a longer period. The life expectancy figure I have given you is not binding upon you, but may be considered by you together with your own experience and the evidence you have heard concerning the condition of plaintiff's health, her habits, employment and activities in deciding what plaintiff's present life expectancy is.

### Damages – Personal Injury- Loss of Earnings

Plaintiff Rose Russo is entitled to be reimbursed for any earnings lost as a result of her injuries caused by the Defendant(s) negligence from the time of the accident to today. Moreover, if you find that as a result of those injuries plaintiff has suffered a reduction in her capacity to earn money in the future, then plaintiff is also entitled to be reimbursed for loss of future earnings.

Any award you make for earnings lost to date must not be the result of speculation; any award must be calculated from the number of days that you find plaintiff was disabled from working by the injuries and the amount that you find plaintiff would have earned had she not been disabled.

46

Any award you make for reduction of plaintiffs earning capacity in the future should be determined on the basis of plaintiff's earnings before the accident, the condition of plaintiff's health, her prospects for advancement and the probabilities with respect to future earnings before the accident, the extent to which you find that those prospects or probabilities have been reduced by the injuries, the length of time that you find plaintiff would reasonably be expected to work had she not been injured, the nature and hazards of plaintiff's employment and any other circumstances which would have an effect on plaintiff's earnings capacity.

Plaintiff was 60 years old when this accident occurred and has a work life expectancy according to the work life expectancy tables in evidence of 65. Such tables are, of course, nothing more that statistical averages. They neither assure that plaintiff will have the span of working life I have given you nor assure that plaintiff's span will not be greater. The figures I have given you are not binding upon you, but may be considered by you together with your own experience and the evidence you have heard in determining what plaintiff's work life expectancy is. If you find that plaintiff is entitled to an award for reduction of earning capacity in the future, you will fix the dollar amount of such reduction over the entire period that you find plaintiff will suffer such reduction and include that amount in your verdict. In your verdict you will state separately the amount awarded for loss of earnings to date, if any, and, if you make an award for loss of future earnings, you will state in your verdict the amount awarded and the period of years over which such award is intended to provide compensation. Do not state an amount per year but only a total amount for the entire period.

**THE BURDEN OF PROOF**

In a civil action, the Plaintiff bears the burden of proof. Plaintiff has the burden of proving every essential element of Plaintiff's case by a preponderance of the evidence. To prove by a preponderance of the evidence means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means enough evidence, considering all the evidence in the case when considered and compared, to produce in your minds that what is sought to be proven is more likely true than not true. Preponderance of the evidence means evidence that has more convincing force than that opposed to it. If the evidence is so evenly balanced that you are unable to say that the evidence on either side of the issue preponderates, your finding on that issue must bear against the party who has the burden of proving it. You should consider all of the evidence, bearing upon every issue regardless of who produces it. The Defendant is not required to put on any affirmative evidence as concerns the Plaintiff's claims.

Wright, <u>Connecticut Jury Instructions</u>, Section 521.

**CREDIBILITY OF WITNESSES**

The credibility of witnesses and the weight to be given to their testimony are matters which it is peculiarly your function to determine. However, I may properly make certain suggestions to you. No fact is, of course, to be determined merely by the number of witnesses testifying for or against it; it is quality, not quantity, of testimony which controls. In weighing the testimony of a witness, you should consider the witness's appearance upon the stand; you should try to "size him up"; you should have in mind all those little circumstances which point to any truthfulness or untruthfulness. You should consider any possible bias or prejudice witness may have, whether for or against the Plaintiff or the Defendant; any interest or lack of interest, of whatever sort, in the outcome of the trial; any ability to observe facts correctly, and to remember and relate them truly and accurately. You should test the evidence witness gives by your own knowledge of human nature and of the motives which influence and control human action. If any facts are admitted or otherwise proved to you, you may well bring them into relation with the witness testimony and see if they fit together with it. In short, you are to bring to bear upon it the same considerations and use the same sound judgment you apply to the questions of truth and veracity which are daily presenting themselves for your decisions in the ordinary affairs of life.

Wright, Connecticut Jury Instructions, Sec. 640.

If you believe the testimony of a single witness, you are entitled to found your verdict upon such testimony, even though the witness stands alone and his testimony is opposed to that of others. It is the quality, not the quantity, of testimony that is important. The weight of the evidence is not determined by the number of witnesses for or against any one proposition.

Wright & Ankerman, Connecticut Jury Instructions, (4th Ed. 1993), Section 310.

## VI.    CONDUCT OF COUNSEL

Perhaps I should tell you there has been occasion for the lawyers in this case to confer with this Court out of your hearing. On occasion, the Court has excused you, the jury, from this room so that a point of law or objection which was offered might be urged or argued. In such situations you, the jury, in no way are to feel slighted. You are not to muse or venture on what was being discussed. Likewise, you should have no resentment towards the attorney who requested that you, the jury, be excused. In the interests of justice and to expedite a trial, it is perfectly proper that conferences be held at this bench between counsel and the Court. This further serves to avoid the inconveniences of having the jury file out and file back in again. It serves further to prevent the jury from becoming confused on technical legal matters. In short, you have been excused from this room during the conduct of this case to avoid having you listen to arguments on questions of law which concerned only counsel and the Court.

Wright & Ankerman, <u>Connecticut Jury Instructions</u>, (4th Ed. 1993), Section 16.

## VII.    MUNICIPAL LIABILITY

The Town of Ridgefield; Board of Education, Town of Ridgefield (hereinafter referred to as "The Town") is a defendant in this case. One claim against The Town is based upon Connecticut General Statutes section 52-557n(a)(1)(A).

This statute provides that The Town is responsible for ministerial acts and is not responsible for discretionary acts of its employees, officers or agents.

Ministerial acts are defined as a prescribed policy or procedure. <u>Moffo v. Voss</u>, 2001 WL 1659317 at *3, citing <u>Kolaniak v. Board of Education</u>, 28 Conn. App. 277 (1992) (if a policy is in place, the defendants may be liable for failing to adhere to its prescribed procedures).

According to Dr. Ralph Wallace, Superintendent of Ridgefield Schools, the person responsible for approving applications for the use of school facilities is the school's principal.

Ministerial acts are those performed in a prescribed manner without the exercise of judgment or discretion as to the proprietary act. *Gauvin v. New Haven,* 187 Conn. 180, 184 (1982).

Whether the acts complained of are discretionary or ministerial "is a factual question which depends upon the nature of the act complained of." *Gauvin,* 187 Conn. at 186.

Mary Capwell has given deposition testimony stating at a school event with 600 attendees, the school's policy would have required 15 teachers, two administrators, and a police officer to supervise.

The police officers' duties would routinely include monitoring and watching pedestrians, and when needed, traffic control and attending to unexpected emergencies. The officer would routinely be stationed both inside and outside of the building, and would

monitor and watch pedestrian traffic on the front walk, the steps of the school and in the parking lot after the event.

**The Ridgefield defendants objects to this charge as it includes facts not in evidence. The Ridgefield defendants have submitted their own charge on this issure.**

## RIDGEFIELD DEFENDANTS' PROPOSED REQUEST TO CHARGE

## NEGLIGENCE

In her Complaint, the plaintiff has alleged that the defendants, the town of Ridgefield and the Board of Education of the Town of Ridgefield, were negligent in their supervision of students and provision of security at the 'talent show' which took place on November 4, 2000, and that this negligence caused the injuries and losses the plaintiff suffered, and the extent of those injuries and losses. The defendants have denied that this was a school sponsored function or that they were acting negligently.

Negligence is the doing of something which a reasonably prudent person would not do under the circumstances, or, conversely, failing to do what a reasonably prudent person would do under the circumstances. It is the breach of a legal duty owed by one person to another, and such legal duty is the exercise of reasonable care.

Reasonable care is defined as the care which an ordinarily prudent or careful person would use in view of the surrounding circumstances. It is not the care which you personally think he ought to have used. You must determine the question by placing an ordinarily prudent person in the situation of the defendants, Benjamin Waring, Gregory Verbanic, Robert Rowe, Diane Schrier, the Town of Ridgefield and the Ridgefield Board of Education, and in the situation of the plaintiff, Rose Russo, and ask yourselves, what would such a person have done? It is this care, that of an ordinarily prudent person under the circumstances, which I mean when I speak of "reasonable care," or when I use the word "reasonable" or "reasonably." Please note that it is the care which such a person would have used under the surrounding circumstances, that is to say, in view of the facts they knew, or as

54

such a person would have perceived and known. In circumstances of slight danger a slight amount of care might be sufficient to constitute reasonable care, while in circumstances of great danger a correspondingly great amount of care would be required to constitute reasonable care.

In order to prevail on a cause of action for negligence, the plaintiff must also prove causation. That is, the plaintiff must prove that the defendants' acts were a proximate cause of the injuries sustained by the plaintiff. An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing injury, that is, if the injury or damage was a reasonably foreseeable consequence of the defendants' acts or omissions. In other words, if defendants' acts had such an effect in producing the injury that reasonable persons would regard it as being a cause of the injury, then the act or omission is a proximate cause.

In order to recover damages for any injury, the plaintiff must show by a preponderance of the evidence that such injury would not have occurred without the conduct of one or more of the defendants. If you find that the plaintiff complains about an injury which would have occurred even in the absence of the defendants' conduct, you must find that the defendants did not proximately cause plaintiff's injury.

Defendants are not liable if plaintiff's injury was caused by a new or independent source of an injury that intervenes between the defendants' acts or omissions and the plaintiff's injury and produces a result that was not reasonably foreseeable by the defendants.

The plaintiff also must prove her damages. In this case, the plaintiff seeks to recover money damages for his alleged injuries. You should not consider the question of damages unless you have determined, first, that one or more of the defendants breached a legal duty owed to the plaintiff and that breach was a proximate cause of the her injuries.

You must not speculate or guess as to [ **special** ] damages.  It is the plaintiff's burden to prove each element, item and amount of damages, not the defendants' burden to disprove them.

**Plaintiff objects to this last paragraph. Not applicable to general damages.**

Sand, et al, Modern Federal Jury Instructions, 87-15;
Turpin v. Mailet, 619 F.2d 196 (2d Cir. 1980);
Jury Charge by Nevas, J., Williams v. Luzietti, et al,
Civil No. H-80-177 (AHN)(1986)
Wright & Ankerman, Conn. Jury Instructions (Civil)

(4th ed.) & 2003 Cumulative Supplement, § 522(a)-(g).

## APPORTIONMENT

In considering the apportionment of fault, you should determine the percentage of responsibility allocated to each party, including the plaintiff, as compared to the combined responsibility of all parties to the action, **[including the settled parties,]** Benjamin Waring, Gregory Verbanic and Robert Rowe. You should consider the nature and quality of the conduct of each party. You should determine the extent of responsibility of the defendants, the extent of responsibility of the plaintiff, and the extent of responsibility of **[the settled parties, if any.] should read [other individuals, even though not a party in this action.]**

Kyrtatas v. Stop & Shop, 205 Conn. 694

**Plaintiff objects to disclosing the settlement. Defendant may not disclose to the jury the fact that other individuals were parties to the action nor that any settlement was reached with said parties. See Conn. Gen. Stat. 52 - 216(a).**

I am not suggesting by using these examples that any or all parties are each responsible, to some degree, for this accident. You may find that a particular party did not exhibit any negligence or fault, or that such negligence or fault, if found, was not a proximate cause of the accident. In that event, you would attribute zero percentage of negligence to that particular party.

You must, however, consider on a comparative basis the nature and quality of the conduct of all parties involved in this lawsuit and you must attribute to each party that percentage of negligence - from 0% to 100% - which you find to be that party's involvement in proximately causing the plaintiff's injuries and damages. By all parties, I mean just that; all parties including the plaintiff and all defendants, including those defendants who have already settled with the plaintiff, Benjamin Waring, Gregory Verbanic and Robert Rowe. Conn. Gen. Stat. § 52-572h;

## DUTY OF RENTER TO PROVIDE SECURITY FOR DEMISED PREMISES

Before, I instructed you that in order for the plaintiff to prevail, she would have to prove that the defendants breached a legal duty owed to her. You must determine whether the plaintiff has proven that a duty owed to her has been breached by the defendants. This necessarily means that you must decide whether she has proven the existence of a duty as well as a breach of that duty.

Duty is a legal conclusion about relationships between individuals, made after the fact, and is imperative to a negligence cause of action. The existence of a duty is a question of law and only if such a duty is found to exist would you then determine whether the defendant violated that duty in the particular situation at hand.

The Ridgefield Board of Education and the Town of Ridgefield contend that they merely rented the auditorium to Diane Schrier for the production of the talent show in question. As a matter of law, it has been held that a landlord does not owe a duty for security against actions of a third party on premises that are controlled by the tenant. Thus, if you find that Ms. Schrier was renting the premises and that she was not acting as an agent for the Ridgefield defendants, then, as a matter of law, the Ridgefield defendants do not owe a duty to the plaintiff to provide security and supervision against the actions of third parties.

Smith v. Dodge L.P., 811 A.2d 881 (Md. Ct. Spec. App. 2002), and cases cited therein.

**Plaintiff objects. Not applicable.**

**Defendant Diane Schrier objects on the grounds this is a non delegable duty.**

## GOVERNMENTAL IMMUNITY PURSUANT TO C.G.S. § 52-557n

The Town of Ridgefield and the Ridgefield Board of Education deny that the talent show was a school sponsored event to which they owed any duty to provide security or supervision. However, should you decide that the talent show was a school sponsored event, the Town of Ridgefield and the Ridgefield Board of Education, claim that they still are entitled to immunity for the claims in the present matter. This also means that they would be entitled to immunity even if you find that they were somehow negligent in this matter.

Under Connecticut law, municipalities and their agencies are not be liable for damages to person or property caused by "the negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."[1]

Discretionary or governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. On the other hand, ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action. [2]

"The act of promulgating policy is a discretionary activity. A policy, by its definition, is 'a definite course or method of action selected from among alternatives ... to guide and determine present and future decisions.' The fact that a policy is enacted 'to guide ... future decisions' indicates that the board was engaged in a legislative, and therefore discretionary, activity.[3]

---

[1]    Connecticut General Statutes section 52-557n(a)(2)(B)
[2]    Heigl v. Board of Education, 218 Conn. 1, 5 (1991), citing Gauvin v. New Haven, 187 Conn. 180, 184 (1991)
[3]    Heigl v. Board of Education, 218 Conn. 1, 5-6, 587 A.2d 423 (1991); See also Spitzer v. Waterbury, 113 Conn. 84, 87, 154 A. 157 (1931).

Other examples of discretionary conduct are those which involve the supervision of school children,[4] including the decision not to provide any supervision of students at afterschool recreational events, sporting events and detention,[5] as well as, any decisions concerning the amount of supervision and the quality of supervision.

Therefore, I will instruct you that, as a matter of law, the supervision and security of the talent show in question was a discretionary duty to which the Town of Ridgefield and the Ridgefield Board of Education are entitled to immunity.

**Plaintiff objects to this charge. The Court has already held the determination of whether official acts or omissions (ie. arranging for faculty chaperones and providing security for school events) was discretionary or ministerial, is a question left to the trier of fact.**

---

[4]  Purzycki v. Fairfield, 244 Conn. 101 (1998)

[5]  Dube v. Bye, 1999 WL 1273699 (Conn.Super., December 13, 1999); Cluney v. Regional School District 13, 2000 WL 893437 (Conn.Super., June 19, 2000); Caruso v. DeMartino, 1997 WL 531208 (Conn.Super., August 15, 1997).

## AGENCY

In this case, The Town of Ridgefield and the Ridgefield Board of Education contend that the talent show was not a school sponsored event and that they merely rented the auditorium to Mrs. Schrier for the event. However, both the plaintiff and Diane Schrier claim that the Talent Show was a school sponsored event. As the parties claiming this, they have the burden of proving that the Talent Show was a school sponsored event and that Diane Schrier was acting as an agent of the Board of Education.

"To constitute the relation of master and servant, the one for whom the service is rendered must consent or manifest his consent to receive the services as a master." [6] "One for whom services are rendered without his consent or manifestation of consent is not a master. One does not become a servant by believing that he is one and intending to render service as one..."[7]

You must determine, based on all of the facts presented at trial, whether the plaintiff or Diane Schrier, has proven that she was acting as an agent of the Board of Education in initiating, organizing and producing the talent show which took place on November 4, 2000.

In making this determination, you should examine all of the facts and circumstances of the Talent Show, including, among other things, the involvement of any Board of Education employees, acting in their official capacities, in the production of the show; the amount of monetary funding, if any, by the Board of Education to the talent show; who made the major decisions concerning the talent show; whether this was a service rendered to the Ridgefield Board of Education and the Town of Ridgefield; and weather the Ridgefield

---

[6] Restatement (Second) of Agency § 221 (1965)
[7] Id. Comment a.  *See also*, <u>Morgan v. Veterans of Foreign Wars of the United States</u>, 206 Ill. App. 3d 569 (1991) (no agency relationship between the VFW and a volunteer assisting a local post with a raffle).

Board of Education and the Town of Ridgefield manifested their consent to receive this service.

**Plaintiff objects to this charge. Diane Schrier would be an agent of the East Ridge Middle School, as a matter of law, if the jury finds the talent show to be a school sponsored event. If the jury finds it is not a school sponsored event, Diane Schrier can be personally liable.**

## MITIGATION OF DAMAGES

One who has been injured by another must use reasonable care to promote recovery and prevent any aggravation or increase of the injuries. This is known as the duty to mitigate one's damages. This rule is one of good faith and reasonable conduct, and the requirement is met when the plaintiff does what a reasonable prudent person would be expected to do under the same circumstances to prevent the aggravation of injuries already received and to effect a recovery from such injuries.

The test of good faith and reasonable conduct must be applied under all the conditions surrounding the plaintiff at the time.

If you find that the plaintiff in this action acted in good faith, resorted to such means and adopted such methods as were reasonably within his reach in order to make his damages as small as possible, then you won't have to consider the question of whether the damages should be diminished.

If, on the other hand, you find that he fell short of that test, that he did not act in good faith, and did not resort to such means and adopt such methods as were reasonably within his reach to make his damage as small as possible, then you ought to take off from the damages which otherwise you would award to him such sum as you think fairly measures the amount to which his damage has been increased by reason of his failure in his duty in this respect.

Miller v. Lovett, 879 F.2d 1066, 1070 (2d Cir. 1989)

## EXPERTS

Now, in weighing and considering the testimony of the so-called experts, in determining to what extent you will attach weight to the opinions which they gave, you are to apply to them the same rules that you apply to any witness, insofar as it relates to the interest, bias, or prejudice, appearance and demeanor upon the witness stand, frankness and candor, and so forth. You are to determine whether these witnesses are possessed of peculiar and exclusive knowledge and experience in a specialized field. The value which, of course, is to be attached to the testimony and the weight to be accorded, will of course depend upon many other things: Upon the actual skill possessed by the so-called expert, by the experience he has had, and by the training he has had. Has his experience and training been long or brief? Has it been practical or theoretical? Has it been under circumstances where reasonably and logically he has acquired a skill peculiar and greater than that of others, or otherwise?

In considering the testimony of these experts further, you should ask yourselves: What opportunity have the experts had to analyze and study the actual accident scene? Has the length of time of their investigation been adequate? Has the opportunity by which they could have gained personal knowledge been sufficient?

Those are matters to which you are to give such consideration as your own good judgment suggests. Finally, as the witnesses testified before you, have they produced before a rational and reasonable basis in support of the opinion which they venture? As they testify, docs their mode of testifying indicate care, skill, intelligence, and candor, or does it indicate the contrary? Would they undertake to support their opinion by relating it to some basis in fact, is the basis, which they bring forth in support of that particular opinion, reasonable and logical and, in your minds, a sound basis?

Wright, <u>Conn. Jury Instructions</u> § 325

In resolving any conflict that may exist between the testimony of two different expert witnesses, you should weigh the opinion of one expert against the other.  In doing so, you should consider the relative qualifications, experience and credibility of the expert witness, as well as the reasons for each opinion and the facts on which the opinions are based.

Wright, <u>Conn. Jury Instructions</u>, 2d ed. § 325

## RIDGEFIELD DEFENDANTS' SUPPLEMENTAL PROPOSED JURY CHARGE

In the present case, the Town of Ridgefield and the Ridgefield Board of Education have brought a claim for indemnification against Diane Schrier. The Town of Ridgefield and the Ridgefield Board of Education claim that the talent show was not a school sponsored event and that Diane Schrier, as the renter of the auditorium, was solely responsible for supervision and security of the event. Town of Ridgefield and the Ridgefield Board of Education further claim that Ms. Schrier is responsible for any liability which you might assess against the Town and Board.

Indemnity shifts the impact of liability from passive joint tortfeasors to active ones. Thus, to maintain an action for common-law indemnification the Town and Board must prove that: (1) that Ms. Schrier was negligent; (2) Ms. Schrier's negligence, if any, was the direct, immediate cause of the accident and the plaintiff's injuries injuries; (3) that Ms. Schrier was in control of the supervision and security of the talent show to the exclusion of the Town and Board; and (4) that the Town and Board did not know of the negligence of Ms. Schrier, had no reason to anticipate it, and could reasonably rely on Ms. Schrier not to be negligent." In other words, should you find that Ms. Schrier was negligent, you must find in favor of the Town and Board on their cross-claim if you also find that Ms. Schrier was in exclusive control of the supervision and security of the talent show on November 4, 2000. **Plaintiff objects to this charge. There is no reliable evidence that Diane Schrier was a renter.**

Skuzinski v. Bouchard Fuels, Inc., 240 Conn. 694, 697-8, 694 A.2d 788 (1997).

## DEFENDANT DIANE SCHRIER REQUEST TO CHARGE

## CAUSATION

In order to prevail, the plaintiff must prove there was a causal connection between Ms. Schrier's and/or the Ridgefield Defendants' actions or inactions and the resulting injuries sustained Ms. Russo. To prove that causal connection, Ms. Russo must prove by a preponderance of the evidence that the actions or inactions of Ms. Schrier and/or the Ridgefield Defendants were both a "cause in fact" and a "proximate cause" of the alleged injuries.

The test for "cause in fact" here is, simply, would the injury have occurred were it not for M. Schrier's or the Ridgefield Defendant's conduct. **[OR NON CONDUCT?]**

In the law, "Proximate" is not the same thing as the word "**Approximate**." "Proximate cause" simply means a substantial factor. The question is whether Ms. Schrier's and/or the Ridgefie Defendants' negligence was a substantial factor in causing any of the injuries claimed by Ms. Russo substantial factor is one that continues down to the moment of damage, or at least, down to the poir where the final active injurious force which immediately produced or preceded the damage was set force. Stated another way, Ms. Schrier's and/or the Ridgefield Defendant's negligence must have t proved to have substantially produced or aided in producing the incident between Ms Russo and Benjamin Waring in natural sequence. This does not mean that the law recognizes only one proxim cause of an injury or damage, consisting of only one factor. On the contrary, many factors may operate at the same time, either independently or together, to cause injury or damage and, in such a case, each may be a proximate cause.

In sum, to prove a causal connection means that you must find both that the injury would

not have occurred if it were not for Ms. Schrier's and/or the Ridgefield Defendants' actions or inactions and that Ms. Schrier's and/or the Ridgefield Defendants' actions or inactions were a substantial factor in causing the alleged injuries.

If you find that Ms. Schrier's and/or the Ridgefield Defendants' negligence was the cause in fact and proximate cause of Mr. Russo's injuries, then you will have found for Ms. Russo on her negligence claim. If, on the other hand, you find that Ms. Schrier's and/or the Ridgefield Defendant negligence was not the cause in fact and/or proximate cause of Mr. Russo's injuries, you will have found for either Ms. Schrier, the Ridgefield Defendants or both.

*Paige v. St. Andrews Roman Catholic Church*, 250 Conn. 14, 25 (1999).

**Plaintiff objects to this charge. Non conduct should be added above & defendant Schrier and defendant Town of Ridgefield should not be treated as one entity. Further object to definition of substantial factor.**

## STATEMENTS IN PLEADINGS

You have heard that the plaintiff at one time while this case was pending made certain statements in her complaint concerning the negligence of Benjamin Waring, Gregory Verbanic and Robert Rowe. These statements are known as evidential admissions by the plaintiff. These evidential admissions are not binding on you, but should be considered like any of the other evidence in this case.

*Drier v. Upjohn Co.*, 196 Conn. 242, 492 A.2d 164 (1985)

**Plaintiff objects to this charge. Defendant may not disclose to the jury the fact that other individuals were parties to the action nor that any settlement was reached with said parties. See Conn. Gen. Stat. 52 -216(a)**

## DEFENDANT DOES NOT GUARANTEE SAFETY

If you should find by a fair preponderance of the evidence that Diane Schrier controlled the premises at the time of the incident, I now must correct a common misunderstanding of the law in the area of premises liability. It is not the law that the plaintiff is entitled to compensation merely because he or she is injured while on the premises controlled by another. The defendant is not required to guarantee the safety of all persons on the premises. Rather the defendant is only liable for the resulting injuries if the plaintiff meets the burden to prove the necessary elements of a defective premises claim. The defendant, Diane Schrier, is only liable to the plaintiff in the event that the accident happened through her negligence, and negligence means the failure to use that care which a reasonable prudent person would use under all the circumstances.

*Kowinko v. Salecky*, 5 Conn. Cir. 657 (1969); *Henry v. Supermarkets General, Sullivan, J.*, Docket # CV 96, 123559.

**Plaintiff objects to this charge. This is not a defective premises claim; otherwise the request to charge is redundant.**

**VOLUNTEER PROTECTION ACT – 42 USCS §14501**

Diane Schrier claims that a federal statute known as the Volunteer Protection Act bars any recovery by the plaintiff or co-defendant Ridgefield Board against her. That is, Ms. Schrier would have no liability to either the plaintiff or Ridgefield Board if you find that she was acting within the scope of her responsibilities as a volunteer for either the Ridgefield Board or Ridgefield Food Bank. In addition, you also would return with verdicts in Ms. Schrier's favor if you find that the talent show was organized and operated as a non-profit organization, a phrase that I will define for you shortly.

The Volunteer Protection Act provides that no volunteer of a nonprofit organization or governmental entity shall be liable for harm caused by an act or omission of the volunteer on behalf of the organization or entity if . . . the volunteer was acting within the scope of the volunteer's responsibilities in the nonprofit organization or governmental entity at the time of the act or omission . . . .

The statute defines a nonprofit organization as any not-for-profit organization which is organized and conducted for public benefit and operated primarily for charitable, civic, educational, . . . welfare, or health purposes.

In this case there has been evidence that on the night of the talent show people were collecting food for distribution to the Ridgefield Food Bank. If you find that at the time of the incident Diane Schrier was acting as a volunteer for the Ridgefield Food Bank, that is, performing services for a non-profit organization, then neither the plaintiff nor the co-defendant can recover against her and you should return defendant's verdicts in Ms. Schrier's favor on all counts.

71

Similarly if you find that at the time of the incident, Diane Schrier was acting as a volunteer for the Ridgefield Board, that is, performing services for a governmental entity, then neither the plaintiff nor the co-defendant can recover against her and you should return defendant's verdicts in Ms. Schrier's favor on all counts.

Finally, if you should find that the talent show was organized and conducted primarily for public benefit and operated primarily for charitable, civic, educational, welfare or health purposes, then neither the plaintiff nor the co-defendant can recover against her and you should return defendant's verdicts in Ms. Schrier's favor on all counts.

42 USCS 14501, et seq.

**Plaintiff objects to this charge. There has never been a defense that Diane Schrier was a volunteer for the Ridgefield Food Bank. The Talent Show and the Ridgefield Board of Education are not non profit organization. The Federal Volunteer Protection Act is not applicable.**

**Gaudet v. Braca No. CV 98351943S, 2001 WL 1617208 (Conn.Super.)**

**NEGLIGENT MISREPRESENTATION**

Ms. Schrier also alleges that the Ridgefield Board is barred from recovery through its negligent misrepresentations to her. Negligent misrepresentation occurs when one, in the course of its business, profession or employment, supplies false information for the guidance of others in their transactions, and that other person suffers harm after reasonably relying on that information. Even an innocent misrepresentation constitutes negligence if the party supplying it knew or should have known it was false. In other words, a misrepresentation would be negligent if the party making the communication failed to exercise reasonable care in obtaining and conveying accurate information.

Ms. Schrier alleges that the Ridgefield Board approved the talent show as an in-school event and communicated that to her. She also alleges that all further actions of and communications by the Ridgefield Board constitute representations that the talent show was an in-house, school sponsored event. Such actions and communications include the Ridgefield Board's failure to require any of the documentation, including but not limited to liability insurance, or follow its other written directives required of outside groups; that it asserted control over the content of the talent show and conduct of the participants and that it printed without charge programs for the talent show.

If you find that the Ridgefield Board communicated to Diane Schrier that the talent show was not an in-house, school-sponsored event, when it knew or should have known the that information was false it is guilty of negligent misrepresentation and you should return a verdict in her **[ Diane Schrier's]** favor.

D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 218 (Conn. 1987)

The Ridgefield defendants object to these charges as they have found no authority to support Mrs. Schrier's claim that these doctrines are special defenses to a claim for indemnification.

### WAIVER

As I told you earlier, the Ridgefield Board seeks to recover from Diane Schrier under the legal theory of indemnification.

Ms. Schrier has filed affirmative defenses alleging that the Ridgefield Board, through their actions and statements, express or implied, is barred from such recovery. The first affirmative defense alleges that the Ridgefield Board waived any right to recover from Ms. Schrier.

Waiver is the voluntary relinquishment of a known right. It involves the idea of assent, and assent is an act of understanding. This presupposes that the person to be affected, in this case the Ridgefield Board, had knowledge of its rights, but did not wish to assert them. Intention to relinquish must appear, but acts and conduct inconsistent with intention to assert rights are sufficient. The rule is that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. Where there is no express waiver, one may be implied. Such a waiver may be found as an inference of fact from conduct under the circumstances of the case.

In this case there has been evidence of certain rules and regulations governing the use of school facilities by outside groups. If you find that the Ridgefield Board failed to abide or assert its rights under those its regulations and that as a natural consequence harm flowed to Diane Schrier, then it has waived any right of recovery against her and you should find in Diane Schrier's favor on the indemnification claim.

*MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538, 547, 173 A. 173 (1934); 92 C.J.S. 1041, Waiver.

The Ridgefield defendants object to these charges as they have found no authority to support Mrs. Schrier's claim that these doctrines are special defenses to a claim for indemnification.

## ESTOPPEL

Ms. Schrier also alleges that the Ridgefield Board is estopped from asserting its claim for indemnification. The two elements of estoppel are that one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief; and the other party, influenced thereby, must change her position or do some act to her injury which she otherwise would not have done.

In this case you heard evidence that the Ridgefield Board approved Ms. Schrier's application for use for in-house use of facilities; that such approval was for the ERMS Talent Show; that it failed to require her to provide any of the documentation, including but not limited to liability insurance, or otherwise follow its other directives required of outside groups; that it asserted control over the content of the talent show and conduct of the participants and that it printed without charge programs for the talent show. If you find that as the result of any one or more of these actions or statements, or as a result of any other evidence of any other action, inaction or statements, express or implied, by the Ridgefield Board, Diane Schrier was caused to believe that the talent show was being put on under the auspices of East Ridge Middle School or otherwise as an in-house, school-sponsored show, then the first element of estoppel has been satisfied.

You also heard evidence that Diane Schrier would not have continued with the talent show if she had been informed by the Ridgefield Board that the show was a non-school event. You also will recall that there was evidence that if she had been required to comply with the regulations for outside groups, including but not limited to acquiring liability insurance that would have protected not only the Ridgefield Board but her as well, the show would have cancelled. If you find that the actions, inactions, statements, either express or

implied, of Ridgefield Board, either innocently or intentionally, resulted in Diane Schrier

proceeding with the talent show when she would not have otherwise, then she has satisfied

the second element of estoppel and you should return with a verdict in her favor as against

the Ridgefield Board.

*Dickau* v. *Glastonbury,* 156 Conn. 437, 441, 242 A.2d 777 (1968); *Pet Car Products, Inc.* v.

*Barnett,* 150 Conn. 42, 53, 184 A.2d 797 (1962).

0

    The Ridgefield defendants object to these charges as they have found no

authority to support Mrs. Schrier's claim that these doctrines are special defenses to a

claim for indemnification.

    The Ridgefield defendants object to this charge as estoppel cannot generally be

invoked against a government or public agency. One may only invoke this doctrine if he

has been induced by the conduct of municipal officers and where he would be subject to

a substantial loss if the municipality were permitted to negate the acts of its agents.

There are two elements to estoppel. The [municipality] must do or say something that is

intended or calculated to induce another to believe in the existence of certain facts and

to act upon that belief; and the other party, influenced thereby, must actually change

his position or do some act to his injury which he otherwise would not have done.

Moreover, it is the burden of the person claiming the estoppel to show that he exercised

due diligence to ascertain the truth and that he not only lacked knowledge of the true

state of things but had no convenient means of acquiring that knowledge.

**Pet Car Products, Ins. V. Barnett,** 150 Conn. 42 (1962).

**INSURANCE**

You have heard a number of references during the course of this trial to Ridgefield

Defendants' regulation that individuals or groups renting its facilities obtain liability

insurance in the amount of $500,000 that names them as insureds. You also heard evidence

that in-house, school sponsored events are not required to provide such insurance. As I told

you earlier, the plaintiff allege that the talent show was just such an in-house, school

sponsored event. As you also know, the Ridgefield defendants alleg□e that Diane Schrier

was renting the facilities. It is undisputed that the Ridgefield Defendants did not require

Diane Schrier to obtain such liability insurance. You may not to consider this evidence

concerning liability insurance in determining whether any defendant acted negligently. You

may, however, consider the Ridgefield Defendants failure to require such liability insurance

in determining whether the talent show was an in-house, school sponsored event, that is,

whether the Ridgefield Defendants con□trolled the school facilities.


You may also consider the Ridgefield Defendants failure to require such liability insurance in

determing whether Diane Schrier has proven her affirmative defenses of waiver, estoppel and

negligent misrepresentation against the Ridgefield Defendants as I instructed you earlier.

**Fed. R. Evid. 411.**


    **Plaintiff objects to disclosing the amount of liability insurance required.**

    **Ridgefield defendants object to any interjection of insurance in this case as it**

**does not prove agency in this particular matter.**

14.    **ANTICIPATED EVIDENTIARY PROBLEMS**

The Ridgefield Board of Education and the Town of Ridgefield will be filing Motions in Limine re: the "altered" rental forms, expert opinions, evidence concerning insurance, hearsay statements and cumulative testimony.

Plaintiff will be filing Motions in Limine prior to the Pre Trial Conference regarding the objections she has asserted.

Defendant Schrier will be filing Motions in Limine prior to the Pre Trial Conference regarding the objections she has asserted.

15.    **PROPOSED FINDINGS AND CONCLUSIONS**

NA

16.    **TRIAL TIME**

7 - 9 days

17.    **FURTHER PROCEEDINGS**

None anticipated.

18.    **ELECTION FOR TRIAL BY MAGISTRATE**

The Ridgefield Defendants have no objection to a trial before a Magistrate.

Defendant Diane Schrier has no objection to a trial before a Magistrate.

**Plaintiff does not consent to a trial before a Magistrate.**